# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. 20-cr-007-LM |
| v. | |
| JASON MARTIN | |

## GOVERNMENT'S SENTENCING MEMORANDUM
## AND RECOMMENDATION PURSUANT TO 18 U.S.C. § 3553(f)

The United States of America, by Jane E. Young, United States Attorney for the District of New Hampshire, respectfully submits this memorandum in connection with the upcoming sentence of Jason Martin ("defendant"). The government believes defendant should qualify for safety valve treatment under both the U.S. Sentencing Guidelines and 18 U.S.C. § 3553(f). Per the terms of the plea agreement between the parties, the government then recommends a sentence at the bottom of that Guidelines range.

**I.    INTRODUCTION**

On December 9, 2021, defendant pleaded guilty to Count 4 of the indictment, charging him with conspiracy to distribute 40 grams or more of fentanyl and crack cocaine, in violation of 21 U.S.C. §§ 846 and 841. The United States Probation Office determined the total offense level applicable to this conduct to be 30 in its Presentence Report ("PSR"), applying a two-point enhancement based on a BB gun recovered during a search warrant of defendant's residence. Defendant has accumulated just two scoreable convictions, accounting for 2 criminal history points, but was on probation at the time of the offense and therefore falls in Criminal History Category IV as a result of 4 points. PSR ¶¶ 53-54. As outlined in the PSR, after accounting for defendant's acceptance of responsibility, he faces a Guidelines Sentencing Range of 87-108

months of imprisonment, including a statutory mandatory minimum of 60 months.  PSR ¶¶ 94-95.  As set forth below, the government believes the defendant should be sentenced based on a range of 57-71 months with no mandatory minimum.

## II.     BACKGROUND

The charges in this case arose out of a joint investigation by Keene Police and Homeland Security Investigations in Fall 2019.  Specifically, in September 2019, law enforcement learned that Martin's co-defendant Heidi Compos was engaged in the distribution of narcotics in and around Keene, New Hampshire.  In order to confirm that information, members of law enforcement sought to use a confidential informant (CI) to attempt to purchase controlled substances from Compos.

On October 13, 2019, in the presence of law enforcement, the CI arranged for the purchase of 1 gram of heroin/fentanyl and a "50 piece" of crack in exchange for $130 through text messages with the co-defendant.  On the way to the deal, the CI received a call from a Mr. Martin confirming that the CI was en route to the residence Compos and Martin shared in Keene, New Hampshire.  The deal took place inside the residence and was audio recorded.  The CI reported the exchange took place with the with Martin, wherein the CI provided the $130 in exchange for the requested narcotics. Later lab tests showed the purchased quantities to be 0.745 grams of fentanyl and 0.262 grams of crack cocaine.

Law enforcement arranged for two additional controlled purchases on October 22, 2019 and November 18, 2019, which did not involve Martin.  Local law enforcement then sought and obtained a state search warrant for the Keene residence where Martin and Compos were both residing.  The search warrant was executed on November 21, 2019, with both Martin and Compos at the residence at the time of the search.  Apparently the two shared a bedroom, but

were involved in a platonic relationship. In that shared bedroom were identification and ownership documents in Martin's name. Also inside the bedroom was a bag containing approximately $15,064 of U.S. currency and a plastic bag that contained numerous smaller bags of what appeared to be individual fingers of heroin or fentanyl. A later count found 20 smaller bags in the larger bag. The New Hampshire State Police Forensic Laboratory randomly selected five of the 20 bags for analysis. Each bag contained fentanyl and three of the bags contained cocaine. The total estimated weight of the 20 bags was 199.0 grams +/- 2.9 grams. The defendant was arrested that day and was detained on state charges for approximately one month prior to being released to an inpatient program. PSR ¶ 1.

The case was later referred for federal adoption. Defendant was indicted and made an initial appearance on January 24, 2020. After a later bail violation, he was detained from approximately March 1, 2021 until October 25, 2021, when he entered the White Mountain Recovery Home. He has been compliant on release since that point. Defendant has thus served approximately 9 months in custody in connection with the charged conduct.

### III.  THE APPLICABLE GUIDELINES

Under United States v. Booker, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory. Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" United States v. Millan-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 49 (2007)). "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion." Millan-Isaac, 749 F.3d at 66 (quoting Freeman v. United States, 564 U.S. 522, 529 (2011)).

Here, there is no apparent dispute regarding the base offense level based on the PSR's calculation of the applicable converted drug weight. PSR ¶ 35. Specifically, the PSR calculated a converted drug weight of between 700 and 1,000 kilograms, resulting in the base offense level of 28. PSR ¶ 35.

The parties jointly part ways with the PSR on its application of a two-point enhancement for the recovery by law enforcement of a BB gun with a CO2 cartridge and BBs pursuant to § 2D1.1(b)(1). PSR ¶ 36. The PSR correctly notes that the Guidelines do define a "dangerous weapon" to include a BB gun. *See* U.S.S.G. §§ 1B1.1(E) & (H). Because of the dangerous weapon enhancement, the PSR determined the defendant was not eligible for the safety valve under 18 U.S.C. § 3553(f) or the concomitant 2 point reduction set forth in U.S.S.G. § 2D1.1(b)(18).

Here, the parties oppose the dangerous weapon enhancement and the denial of the safety valve reduction. The BB gun was found in the bedroom where Martin and co-defendant Compos cohabitated in an apparently platonic relationship. Specifically, it was found inside a white bureau. Investigators did not note whether the white bureau contained clothing that could be attributed to either a male or female. The report of the search did state that two cellphones belonging to Compos were connected to the white bureau—one on top and one inside—and that Compos later identified a list of phone numbers from inside the bureau as including a drug supplier. The government is aware of no evidence that the BB gun was in Martin's possession, as opposed to simply being inside a bureau belonging to his roommate. On the weight of this available evidence, the government does not believe the dangerous weapon enhancement is appropriately applied to Martin here.

Were the dangerous weapon enhancement to drop out and the safety valve to apply, defendant's total offense level would drop to a 23 and a concomitant Guidelines range of 57-71 months. He also would no longer be subject to the 60 month mandatory minimum under 21 U.S.C. § 841(b)(vi) pursuant to 18 U.S.C. § 3553(f). The government respectfully requests the Court adopt this amendment to the PSR.

## IV.     AN APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(a)

The Court, in fashioning its sentence, must consider the factors set forth in 18 U.S.C. § 3553(a), which provides that the Court, in determining the particular sentence to be imposed, "shall consider":

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As set forth below, the Government believes a sentence at the bottom of the applicable Guidelines, followed by 3 years supervised release, is justified pursuant to the § 3553(a) factors given the seriousness of the offense and the history and characteristics of defendant.

**1. Seriousness of the Offense.**

Here, defendant was initially caught in the distribution of a small amount of crack cocaine in furtherance of the distribution efforts of his co-defendant Compos.  During the execution of the search warrant at his shared residence, he and Compos were found in possession of a substantial additional quantify of fentanyl, approximating 200 grams.  While some of this was assuredly intended for his and Compos' personal use, the quantity nevertheless is correctly counted here and, as noted above, was package in a manner that would facilitate distribution.  In addition, the search warrant led to the seizure of substantial apparent drug proceeds of approximately $15,000, suggesting a robust distribution practice at least consistent with the seized narcotics.  This is incredibly serious conduct.

**2. History and Characteristics of Defendant.**

Defendant is a 37-year-old U.S. citizen.   He failed out of high school and has not obtained a GED in the years that followed.  PSR ¶ 83.  He carries adult convictions for driving while intoxicated and stealing his mother's ATM card and numerous other arrests, but scores only two criminal history points for those past convictions.  *Id.* ¶¶ 50, 51.   It does not appear he has been incarcerated prior to the instant offense, but he was on probation at the time, garnering an additional two criminal history points.

Defendant has a lengthy two-decade history of substance abuse. *Id.* ¶¶ 74-82. From early teenage use of alcohol and marijuana, he later moved on to using heroin, fentanyl, and cocaine/crack. *Id.* ¶¶ 76, 78. He survived an apparent overdose in June 2017 that required law enforcement intervention. *Id.* ¶ 77. He reports a history of generalized anxiety disorder and suicidal ideation, but no history of mental health treatment. *Id.* ¶¶ 72-73. To defendant's credit, he has apparently done well since his October 2021 release to the White Mountain Recovery Center in Littleton, NH, staying sober and working. *Id.* ¶¶ 82-83. The government acknowledges that the prospect of re-incarcerating the defendant at this point of his rehabilitation would carry risks of back-sliding from his recent progress. To be sure, the Court may certainly weigh all of these factors in fashioning a fair and just sentence.

V.   **CONCLUSION**

For the reasons stated above, the Government respectfully requests the Court adopt the parties' recommended change to the Presentence Report and impose a sentence at the bottom of the applicable guidelines. Such a sentence is reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: August 5, 2022

By: /s/ Charles L. Rombeau
Charles L. Rombeau
Assistant United States Attorney
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552